**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH RICKY JACKSON, | ) | Civil Action No. 10 - 247 |
| | ) | |
| Plaintiff, | ) | Judge Gibson |
| | ) | Chief Magistrate Judge Lenihan |
| v. | ) | |
| | ) | |
| JONATHON WOLF, *et al.,* | ) | ECF Nos. 32 & 48 |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AMENDED REPORT AND RECOMMENDATION

## I.   RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss (ECF No. 32) filed by

Defendants Altoona Regional Hospital, Doctor John Doe #6, Doctor John Doe #7, Doctor Jane

Doe #4 be granted, and that any state law claim for medical malpractice against these Defendants

be dismissed without prejudice.  It is further recommended that the Motion to Dismiss filed by

Defendant Natalie Ross (ECF No. 48) be granted in part and denied without prejudice in part.  It

is recommended that Defendant Ross' Motion to Dismiss be denied without prejudice as it

relates to Plaintiff's Eighth Amendment claim and First Amendment retaliation claim.  It is

further recommended that Plaintiff be granted leave to amend his Complaint as to these claims

against Defendant Ross only.  If Plaintiff fails to file a curative amendment within the time

allowed by the District Judge, then this Magistrate Judge recommends that the Eighth and First

Amendment Retaliation claims be dismissed with prejudice.  Defendant Ross' Motion to Dismiss

as to all other claims should be granted.

1

## II. __REPORT__

On October 21, 2011, the Court filed its Report and Recommendation (ECF No. 77) recommending that the Motions to dismiss filed by Defendants Altoona Regional Hospital, Doctor John Doe #6, Doctor John Doe #7 and Doctor Jane Doe #4 (ECF No. 32) be granted, and that any state law claim for medical malpractice against these Defendants be dismissed without prejudice. The Court further recommended that the Motion to Dismiss filed by Natalie Ross (ECF No. 48) be granted. On October 31, 2011, Plaintiff moved for an extension of time in which to file his objections to the Report and Recommendation. (ECF No. 78.) On November 1, 2011, the Court granted Plaintiff's Motion for Extension of Time and Plaintiff was given until December 7, 2011 to file his objections. On December 6, 2011, Plaintiff filed his objections to the Report and Recommendation and requested leave to amend his Complaint. (ECF No. 81.) At pages 8-10 of his Objections at ECF No. 81 entitled "Proposed Amendment," Plaintiff sets forth a more detailed and comprehensive version of facts relating to his Eighth Amendment and First Amendment Retaliation claims against Natalie Ross. The Plaintiff is proceeding pro se, and the Complaint at ECF No. 7 offered no hint as to the facts contained in the "Proposed Amendment" at ECF No. 81. Consequently, the Court files this Amended Report and Recommendation recommending that Plaintiff be permitted to file an Amended Complaint including the averments at pages 8-10 of ECF No. 81 as they relate to his Eighth Amendment and First Amendment Retaliation claims against Defendant Ross only. The Report and Recommendation at ECF No. 77 remains unchanged in all other respects.[1]

---

[1] In his Objections at ECF No. 81, Plaintiff also objects to the Court's recommendation concerning his Eighth Amendment claim against Altoona Regional Hospital. (ECF No. 81 at 2-3.) Again, Plaintiff's averments against Defendant Altoona Regional Hospital fail to state an Eighth Amendment claim for deliberate indifference to serious medical needs; however, Plaintiff may find relief in state court for negligent medical malpractice. To this end, and

## A.  Relevant Facts

Plaintiff Joseph Ricky Jackson ("Plaintiff" or "Jackson") is a pro se individual who filed this civil action pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1986.  (ECF No. 7 at ¶ 1.) Plaintiff asserts violations of his First, Fifth, Eighth, and Fourteenth Amendment rights.  (ECF No. 7 at ¶ 24.)  The claims stem from medical issues arising during Plaintiff's alternative/intermediate sentence involving the Allegheny Drug Court at Cove Forge Behavioral Health and Pyramid Health.  Plaintiff has named fourteen defendants who are doctors, health center employees, a drug court employee, and health centers[2].

On or around October 16, 2008, Plaintiff Jackson was sentenced to Cove Forge Behavioral Health in Williamsburg, Pennsylvania ("Cove Forge")[3] as a result of an alternative/intermediate sentence involving the Allegheny County Drug Court.  (ECF No. 7 at ¶ 17; ECF No. 48-2[4].)  While housed in Cove Forge, Jackson developed hemorrhoids and sought medical attention from Defendants John Doe #1, John Doe #2, Jane Doe #1, and Jane Doe #2. (ECF No. 7 at ¶ 17.)  Defendant John and Jane Does refused to provide Jackson with medical

---

per Plaintiff's request at ECF No. 81 at 7, the Court will provide Plaintiff with a certified copy of the initial Complaint in this matter.

[2] Not all defendants mentioned in this factual background are moving parties.  Moving defendants at ECF No. 32 are Altoona Regional Hospital and Doctor John Doe #6, Doctor John Doe #7, and Doctor Jane Doe #4. Defendant Natalie Ross is the movant at ECF No. 48.  Only the claims against her in her individual capacity remain, as Plaintiff moved to dismiss Defendant Allegheny County Drug Court at ECF No. 51.  The Court granted Plaintiff's motion on May 6, 2011 at ECF No. 52.

[3] In his Complaint at ECF No. 7, Plaintiff originally averred that Cove Forge was located in Williamsport, Pennsylvania.  At ECF No. 64, Plaintiff moved to correct errors in his Complaint and indicated that Cove Forge is located in Willamsburg, Pennsylvania, and not Williamsport.  (ECF No. 64.)  The Court granted Plaintiff's Motion to Correct Error at ECF No. 73.

[4] ECF No. 48-2 is a court order issued by the Court of Common Pleas of Allegheny County, Pennsylvania, Criminal Division, pertaining to Plaintiff's sentence.  This Court may consider matters of public record in deciding motions to dismiss without converting a motion to dismiss into a motion for summary judgment.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

care, and further refused to permit Jackson to seek medical care from the nursing staff at Cove Forge. (*Id.*) Jackson called his girlfriend, who subsequently dialed 911. (*Id.*) The emergency dispatcher sent an ambulance to Cove Forge, where defendant John and Jane Does refused the ambulance staff access to Jackson for medical treatment. (*Id.*)

On November 1, 2008, Cove Forge discharged Jackson from the facility to Defendant Pyramid Health in Altoona, Pennsylvania ("Pyramid Health"). (ECF No. 7 at ¶ 18.) Jackson informed John Doe #4, John Doe #5, and Jane Doe #3 of his medical problem, requested medical care, but was refused treatment. (*Id.*) On November 3, 2008, the hemorrhoids became inflamed such that Jackson could barely walk, at which point he was taken to the emergency room at Altoona Regional Hospital ("Altoona Regional"). (*Id.*) There, Jackson was treated by Doctor John Doe #6, who cut the hemorrhoids to allow them to drain. (*Id.*)

That same day, Jackson was rushed back to Altoona Regional by ambulance, due to profuse bleeding from the hemorrhoids. (ECF No. 7 at ¶ 19.) Jackson was treated by Doctor Jane Doe #4, who stitched the hemorrhoids to stop the bleeding. (*Id.*) Jackson was then "made to walk back" to Pyramid Health from Altoona Regional. (*Id.*)

On the morning after leaving Altoona Regional, November 4, 2008, Jackson was told to clean the Pyramid Health facility. (ECF No. 7 at ¶ 20.) Jackson complained of difficulty walking due to severe pain, and began to crawl on the floor, at which point John Doe #4, John Doe #5, and Jane Doe #3 told Jackson that he was acting like an animal and subsequently had him removed from Pyramid Health. (*Id.*) Jackson was sent to Natalie Ross ("Ross"), an employee of the Allegheny County Drug Court, who told Jackson that he was going back to jail. (*Id.*)

On or around November 3, after being told he was going back to jail,[5] Jackson went home to clean himself up. (ECF No. 7 at ¶ 21.) While at home, Jackson took some medication for the pain, and then went to the emergency room at Allegheny General Hospital ("AGH"). (*Id.*) At AGH, Jackson was told that the hemorrhoids had become infected, and that he needed surgery. (*Id.*)

On Monday, November 11, 2008 Jackson was still bleeding. (ECF No. 7 at ¶ 22.) Doctor James Celabreez performed surgery on the hemorrhoids. (*Id.*) After the surgery was complete, Jackson was informed that he had developed melanoma skin cancer. (*Id.*)

On April 13, 2010, Judge Lester G. Nauhaus revoked Plaintiff's Drug Court alternative/intermediate sentence. Plaintiff's new sentence began on May 26, 2010 at the State Correctional Institution at Camp Hill. (Order of Sentence ECF No. 48-1 at 1-2.) Plaintiff filed the instant Complaint on October 21, 2010. (ECF No. 7.)

Presently before the Court are the Motions to Dismiss filed by Altoona Regional, Dr. Jane Doe # 4, Dr. John Doe # 6, Dr. John Doe #7, and Ross pursuant to Federal Rule of Civil Procedure 12(b)(6).

Liberally construing Plaintiff's Complaint, Plaintiff's claims against Altoona Regional, Dr. Jane Doe #4, Dr. John Doe #6, Dr. John Doe #7, and Ross are found in Paragraphs 26, 29, 32, 35, 37, 39 and aver as follows:

1) That Ross, along with other Defendants, conspired to interfere with Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment rights through her action of sending Plaintiff back to jail for his protected activity of seeking medical treatment. (ECF No. 7 at ¶ 26.)

---

[5] In light of the facts averred by Plaintiff, the correct date is probably November 4, 2008.

2) That Ross, along with other Defendants, conspired to interfere with Plaintiff's civil rights under color of law and in her personal capacity when the Defendants agreed to send Plaintiff back to jail for his repeated requests for medical treatment. (ECF No. 7 at ¶ 29.)

3) That Ross, along with other Defendants, knew that a conspiracy existed to violate and deprive Plaintiff of his civil and constitutional rights, and that Ross had the power to prevent the conspiracy, but instead joined it, sending Plaintiff back to jail. (ECF No. 7 at ¶¶ 32 & 35.)

4) That Altoona Regional and its Defendant Doctors failed to properly treat and diagnose Plaintiff's injuries, resulting in deliberate indifference to his serious medical condition, thereby violating his Eighth Amendment rights. (ECF No. 7 at ¶¶ 37 & 39.)

5) That Altoona Regional and its Defendant Doctors failed to properly treat and diagnose Plaintiff's injuries, which resulted in melanoma skin cancer, acts which constitute gross negligence/medical malpractice. (ECF No. 7 at ¶ 37.)

**B.  Legal Standard**

PRO SE PLEADINGS

The Court must liberally construe the factual allegations of Plaintiff's Complaint because pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotations omitted); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, Federal Rule of

Civil Procedure 8(e) requires that all pleadings be construed "so as to do justice." Fed. R. Civ. P. 8(e).

MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1960 (May 18, 2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 1949 (citing *Twombly* at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57). The court of appeals expounded on this standard in its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The

7

> Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler,* 578 F.3d at 210-11 (citing *Iqbal,* 129 S.Ct. at 1949). Next, the court must consider whether the facts alleged in the complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 211 (citing *Iqbal,* 129 S.Ct. at 1950). To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id.* (citing *Phillips* at 234-35). In applying this plausibility standard, the reviewing court makes a context-specific inquiry, drawing on its judicial experience and common sense. *Id.* (citing *Iqbal,* 129 S.Ct. at 1950).

Courts generally consider only the allegations of the complaint, the attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint may also be weighed if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). A district court may consult those documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## C. <u>Analysis</u>

1. <u>Section 1983 Claims</u>[6]

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim for relief under this provision, the Plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law, and that such conduct deprived the Plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States.  *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law.  *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

    a. <u>Section 1983 Liability for Eighth Amendment Violations by Altoona Regional Doctors</u>[7]

---

[6] Although Plaintiff mentions 42 U.S.C. § 1981, the parties make no argument regarding its application to the claims presently before the Court.  42 U.S.C. § 1981 concerns the making and enforcement of contracts and has no application to the facts and circumstances of the above-captioned case as averred by Plaintiff, so the Court assumes this was simply an error on Plaintiff's part.  *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 447-51 (2008).

[7] The Eighth Amendment's prohibition against cruel and unusual punishment based on the denial of medical care is the only constitutional standard applicable to Jackson's claim against Altoona Regional and its doctors.  Jackson was confined first to Cove Forge, inpatient, and then Pyramid Health, electronically monitored by the Allegheny County Drug Court, and dependent on the halfway houses for all his basic needs.  *See* October 16, 2008 Orders of Court, ECF No. 48-2 at 1-2.  His status was akin to that of a convicted person punished by incarceration.  *See Giddings v. Joseph Coleman Center*, 473 F. Supp.2d 617, 623 (E.D. Pa. 2007), *aff'd*, 278 Fed. Appx. 131 (3d Cir. 2008) (citing *Samson v. California*, 547 U.S. 843 (2006); *Morrissey v. Brewer,* 408 U.S. 471, 477(1972)).

Defendant Altoona Regional argues that its Motion to Dismiss should be granted because there is no indication that Altoona Regional's doctors were deliberately indifferent to the medical needs of Plaintiff. Plaintiff argues that when Doctor John Doe #6 drained, but did not stitch his hemorrhoids, a denial of treatment occurred. Plaintiff further argues that Doctor Jane Doe #4 denied medical treatment when she stitched, but did not bandage the wounds, and she failed to provide pain relief medication. (ECF No. 34 at 5.)[8]

To proceed with a § 1983 claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Court in *Estelle* acknowledged that deliberate indifference may be manifested by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05; *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)( reinforcing the concept that deliberate indifference may be demonstrated by denying, delaying or preventing a prisoner from receiving necessary or recommended medical care). Consequently, "matters relating to the exercise of professional judgment that may constitute medical malpractice are not violative of the Eighth Amendment proscription." *Abdul-Karim v. Terhune,* 113 Fed. Appx. 431, 435 (3d Cir. 2004) (citing *Estelle v. Gamble* 429 U.S. 97 (1976); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.1993)).

In *Farmer v. Brennan*, the United States Supreme Court clarified its meaning of the term "deliberate indifference." 511 U.S. 825 (1994). In *Farmer*, the Court held as follows:

---

[8] Altoona Regional also argues that it is not a state actor and therefore, the § 1983 claims must be dismissed in the absence of state action. Because the Court is recommending that the Eighth Amendment claims against Altoona Regional and its Defendant Doctors be dismissed with prejudice, the Court need not address the issue of whether Altoona Regional and its Defendant Doctors are state actors.

> We hold instead that a prison official cannot be found liable under
> the Eighth Amendment . . . unless the official knows of and
> disregards an excessive risk to inmate health or safety; the official
> must both be aware of facts from which the inference could be
> drawn that a substantial risk of serious harm exists, and he must
> also draw the inference . . . . But an official's failure to alleviate a
> significant risk that he should have perceived but did not, while no
> cause for commendation, cannot under our cases be condemned as
> the infliction of punishment.

*Id.* at 837-38. The *Farmer* Court also discussed its reasoning in *Estelle*, noting that negligence in diagnosing or treating the medical conditions of prisoners will not rise to the level of an Eighth Amendment violation. *Farmer,* 511 U.S. at 835 (quoting *Estelle*, 429 U.S. at 106).

The United States Court of Appeals for the Third Circuit applied this standard in *Montgomery v. Pinchak.* 294 F.3d 492 (3d Cir. 2002). In *Montgomery*, the court stated that in order for a claim to rise to the level of deliberate indifference to serious medical needs, two standards must be met. "First, plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, the plaintiff must make a 'subjective' showing that defendant acted with 'a sufficiently culpable state of mind.'" *Montgomery,* 294 F.3d at 499 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The *Montgomery* Court stated that a factor in the determination of whether the objective standard has been met relates to whether the plaintiff establishes the existence of a serious medical need. *Montgomery,* 294 F.3d at 500. Under *Estelle*, a medical need may be considered "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987) (citing *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir.1981)).

Plaintiff avers not a complete denial or delay of treatment, but rather an insufficiently competent treatment on the part of Altoona Regional.  Plaintiff states that he was treated initially by Doctor John Doe #6, who cut and drained the hemorrhoids, and that upon his return, he was treated again by Doctor Jane Doe #4, who stitched the hemorrhoids to stop the bleeding.  (ECF No. 7 at ¶¶ 18 & 19.)  Even construed liberally, Plaintiff's averments do not include the negative effect of denying a particular treatment by Altoona Regional, but rather state that melanoma eventually resulted due to inept care, which is tantamount to negligence rather than denial of care.

"In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious."  *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 347.  Once again, Plaintiff avers no facts in the Complaint to this effect as to these moving Defendants.  The only permanent medical damage averred relates to the results of alleged ineffectual care, rather than denial of medical attention on the part of Altoona Regional's physicians.

As to the second standard for claims which seek to rise to the level of "deliberate indifference to a serious medical need," there is a requirement that a plaintiff make a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." *Montgomery,* 294 F.3d at 499.  There is nothing in the Complaint to suggest that Altoona Regional's Defendant Doctors were subjectively aware of the fact that Jackson faced a "substantial risk of serious harm," and then disregarded it.  The fact that Altoona Regional's doctors exercised professional judgment that may constitute medical malpractice is not violative of the Eighth Amendment proscription. *Abdul-Karim,* 113 Fed. Appx. at 435.

First, Doctor John Doe #6 treated Jackson's hemorrhoids upon his arrival at Altoona

Regional's Emergency Room in order to allow them to drain. (ECF No. 7 at ¶ 18.) Plaintiff

does not aver any facts which might indicate that further treatment was denied for any reason

other than professional judgment. Afterwards, upon Jackson's subsequent return to the Altoona

Regional emergency room, Doctor Jane Doe #4 stitched the hemorrhoids to stop the bleeding.

(ECF No. 7 at ¶ 19.) Once again, Plaintiff does not aver any facts which might indicate that

Doctor Jane Doe #4 was actually aware of any further medical concerns, nor does he aver that

she denied him further treatment for any reason separate from professional judgment.

Furthermore, Plaintiff does not set forth any facts in his Complaint at ECF No. 7 regarding

Doctor John Doe #7. Plaintiff only mentions in his responsive brief that Doctor John Doe #7

refused him medical treatment, but concedes that other Altoona Regional doctors did respond to

his request, namely, Doctor John Doe #6 and Doctor Jane Doe #4. (ECF No. 34 at 5.) Clearly,

Plaintiff has failed to state a plausible claim for relief pursuant to the requirements of *Twombly*

and its progeny.

Consequently, Plaintiff's § 1983 Eighth Amendment claims against Altoona Regional's

doctors, Dr. Jane Doe #4, Dr. John Doe #6, and Dr. John Doe #7 should be dismissed with

prejudice. Any attempt to amend would be futile in light of the facts and circumstances averred

by Plaintiff.[9]


    b.  <u>Municipal Liability against Altoona Regional</u>

---

[9] The United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must sua sponte "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

In *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id.*

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Id.* at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in Andres v. City of Philadephia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. *Andrews*, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker acted with deliberate indifference to this risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

Altoona Regional cannot be liable under *Monell* unless there is a viable underlying Constitutional claim under § 1983. Because the Motion to Dismiss should be granted on Plaintiff's § 1983 Eighth Amendment claims against the individual Defendant Doctors, Plaintiff cannot maintain his claim against Altoona Regional. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 467 (3d Cir. 1989). Consequently, Altoona Regional's Motion to Dismiss should be granted.[10]

### c.   Defendant Ross' Argument Concerning *Rooker- Feldman*

In her Brief in Support of Motion to Dismiss, Defendant Ross initially argues that "to the extent Plaintiff seeks federal review over the judgments entered in his state court cases, his claims are barred by the *Rooker-Feldman* doctrine."[11] (Defendant Ross' Brief in Support of Motion to Dismiss, ECF No. 49 at 6.)

The *Rooker-Feldman* doctrine is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions. The doctrine originated from two Supreme Court opinions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)*,* and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Specifically, the *Rooker-Feldman* doctrine holds that a United States District Court has no subject matter jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257. *Feldman*, 460 U.S. at 482.[12] "The Rooker-Feldman doctrine

---

[10] To the extent that Plaintiff attempts to allege a state law claim for medical malpractice against Altoona Regional and its Doctors, the Court declines to exercise its supplemental jurisdiction as to these state law claims and recommends that they be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3). Plaintiff may re-file these claims in state court provided he meets all requirements.

[11] A Rule 12(b) (1) motion is the more appropriate vehicle for raising the *Rooker-Feldman* doctrine which is an attack on the court's subject matter jurisdiction.

[12] Habeas corpus petitions are an exception to the jurisdictional bar of *Rooker-Feldman. See Walker v. Horn*, 385 F.3d 321, 329 n.22 (3d Cir. 2004) (citations omitted).

is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir.2000); *see also Gulla v. North Strabane Twp*., 146 F.3d 168, 171 (3d Cir.1998).   This doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights.  *Feldman,* 460 U.S. at 485-86 (citation omitted).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Supreme Court emphasized the narrowness of the doctrine and held that *Rooker-Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." 544 U.S. 280, 284 (2005).[13]  The Court in *Exxon Mobil* further clarified that just because a federal claim was previously adjudicated in state court does not trigger the application of *Rooker-Feldman.*  Thus, the court must determine if the plaintiff in the federal lawsuit has presented "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil,* 544 U.S. at 293 (citations omitted).  If the court finds that an independent claim has been presented, then jurisdiction exists and state law controls whether the defendant prevails on preclusion principles.  *Id.*  As the Court pointed out, "[p]reclusion, of course, is not a jurisdictional matter."  *Id.* (citing Fed. R. Civ. P. 8(c)).

---

[13] The *Rooker-Feldman* doctrine applies to final decisions of lower state courts.  *Walker*, 385 F.3d at 329 (citation omitted).

Shortly after the Supreme Court's determination in *Exxon Mobil*, the United States Court of Appeals for the Third Circuit, while acknowledging the recent *Exxon Mobil* decision, still applied the two-step *Rooker-Feldman* inquiry that it had applied in the past–a claim in federal court will be barred by *Rooker-Feldman* under two circumstances: "first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In Re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). More recently, however, the court of appeals has cautioned that reliance on its pre-*Exxon* formulation of the *Rooker-Feldman* doctrine, and in particular the "inextricably intertwined" prong, may no longer be appropriate. *See, e.g., Gary v. Braddock Cemetery,* 517 F.3d 195, 200 n. 5 (3d Cir. 2008) (citations omitted); *East Hill Synagogue v. City of Englewood,* 240 F. App'x 938, 940 n.1 (3d Cir. 2007) (noting that after *Mobil,* "[t]here is little reason to believe that 'inextricably intertwined' . . . does anything more than state a conclusion or describe a claim that meets the requirements of *Exxon*.") (collecting decisions from other courts of appeals).

In 2010, the United States Court of Appeals for the Third Circuit rejected its pre-*Exxon Mobil* formulation of the *Rooker-Feldman* inquiry, and established the following test, based on the Supreme Court's holding in *Exxon Mobil*:

> [T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil,* 544 U.S. at 284). Furthermore, in formulating the four-part test, the court

of appeals determined that the phrase "inextricably intertwined" neither created an additional legal test nor expanded the scope of the doctrine beyond challenges to state-court judgments. *Id.* at 170. Rather, "[t]he purpose of the [phrase had been] to highlight that a challenge to a judgment is barred even if the claim forming the basis of the challenge was not raised in the state proceedings." *Id.* (alteration to original) (citing *Bolden v. City of Topeka, Kan.,* 441 F.3d 1129, 1141 (10th Cir. 2006)). Hence, the court of appeals opined that the phrase is no more than "a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil.*" *Id.* at 170 (quoting *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 87 (2d Cir. 2005)).

The court of appeals in *Great Western* found that the key to determining whether *Rooker-Feldman* barred a claim lies within the second and fourth requirements of the four-part test. 615 F.3d at 166. Essentially, the second requirement – plaintiff must complain of injuries caused by the state court judgment – is an inquiry into the source of the plaintiff's injury. *Id.* (citing *Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 547 (3d Cir. 2006)). The court of appeals offered the following illustration of a situation where the state court judgment itself was the source of the injury:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the *state judgment* violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

*Id.* at 166-67 (emphasis added) (citing *Hoblock,* 422 F.3d at 87-88). By contrast, the court of appeals noted that in the following example, the source of the injury was the defendants' actions (as opposed to the state court judgment), even though the federal lawsuit asks the federal court to deny a legal conclusion reached by the state court:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Id.* at 167 (citing *Hoblock*, 422 F.3d at 88).  The court of appeals further explained that a useful guidepost in determining the source of the injury is the injury's timing, "that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.*

The fourth requirement of the four-part test – that the plaintiff must invite federal court review and rejection of the state court judgment – is closely related to the second requirement. *Id.* at 168 (quoting *Bolden,* 441 F.3d at 1143).  The fourth requirement focuses, however, on "whether the federal plaintiff's claims will require appellate review of state-court decisions by the district court." *Id.* at 169. Moreover, it looks at the relief that is requested by the plaintiff.

In *Great Western*, the plaintiff claimed that due to an alleged conspiracy between the arbitrator, numerous attorneys, and state court judges, the state court's decisions had been predetermined before the hearing had taken place, violating its constitutional right to a fair hearing.  *Id.* at 171.  When addressing the second and fourth requirements, the court of appeals relied on the reasoning used by the United States Court of Appeals for the Seventh Circuit in two separate cases with similar claims.  *Id.*

In *Nesses v. Shepard,* the *Great Western* court observed that "the federal plaintiff alleged that his losses in state court were the product of a conspiracy among the judges and lawyers." *Id.* (citing *Nesses v. Shepard,* 68 F.3d 1003, 1004 (7th Cir. 1995)). But even though the *Great*

*Western* court acknowledged that the federal plaintiff was, in a sense, attacking the ruling and decision of the state court, because the federal plaintiff "alleged that *'people involved in the decision violated some independent right of his,* such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he [could], without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right.'" *Id.* (quoting *Nesses,* 68 F.3d at 1005) (emphasis in original). Therefore, as a part of the plaintiff's claim for damages, the *Great Western* court found that the plaintiff may show that the violation had caused the state court's decision to be adverse to him, thus doing him harm. *Id.* (citing *Nesses,* 68 F.3d at 1005).

Next, the *Great Western* court noted the reasoning of the court of appeals in *Brokaw v. Weaver,* 305 F.3d 660, 665 (7th Cir. 2002). In that case, the plaintiff contended that her relatives and certain officials had "'conspired – prior to any judicial involvement – to cause false child neglect proceedings to be filed, resulting in her removal from her home in violation of her … substantive and procedural due process rights[.]'" *Great Western,* 615 F.3d at 172 (quoting *Brokaw,* 305 F.3d at 665). Whether the alleged conspiracy would have caused the plaintiff to suffer any damages, absent the state court order, was found to be irrelevant. *Id.* The *Brokaw* court held that *Rooker-Feldman* did not bar the plaintiff's claim, "'because her claim for damages [was] based on an alleged independent violation of her constitutional rights. It was this separate constitutional violation which caused the adverse state court decision.'" *Id.* (quoting *Brokaw,* 305 F.3d at 667).

In applying the reasoning of the Court of Appeals for the Seventh Circuit, the court in *Great Western* found that the federal plaintiff was "not merely contending that the state-court decisions were incorrect or that they were themselves in violation of the Constitution. Instead, [the federal plaintiff] claim[ed] that 'people involved in the decision violated some independent

right,' that is, the right to an impartial forum." *Id.* (quoting *Nesses,* 68 F.3d at 1005). Because the federal plaintiff based its claim on an alleged independent violation of its constitutional rights, the *Great Western* court found that actions of the defendants and members of Pennsylvania judiciary, and not the state court decisions themselves, were the source of the federal plaintiff's purported injury. *Id.* (quoting *Brokaw*, 305 F.3d at 667).

Although the court of appeals' finding on the second requirement was enough to render *Rooker-Feldman* inapplicable to the case, the *Great Western* court examined the facts as applied to the fourth requirement as well. *Id.* at 173. The court of appeals found that "if [the federal plaintiff] could prove the existence of a conspiracy to reach a predetermined outcome in state court, it could recover nominal damages for this due process violation." *Id.* (citing *Carey*, 435 U.S. at 262-64). Because the merits of the state court decisions were immaterial to the existence of the alleged violation, the court of appeals held that the federal plaintiff's "entitlement to such damages could be assessed without any analysis of the state-court judgments. To recover for more than the alleged due process violation, however, [the federal plaintiff] would have to show that the adverse state-court decisions were entered erroneously." *Id.* (citing *Nesses,* 68 F.3d at 1005).

Nevertheless, the *Great Western* court found that this is not the type of appellate review that is barred by *Rooker-Feldman*. *Id.* The relief requested by the plaintiffs in both *Rooker* and *Feldman,* who were seeking to have the state-court decisions undone or declared null and void by the federal courts, required effectively overruling the state-court judgments. *Id.* (citing *Rooker,* 263 U.S. at 414; *Feldman,* 460 U.S. at 468-69). To differentiate, the federal plaintiff in *Great Western* had sought relief in the form damages, and hence, "may, 'as part of [its] claim for damages,' show 'that the [constitutional] violation caused the decision[s] to be adverse to [it] and

thus did [it] harm.'" *Id.* (citing *Nesses,* 68 F.3d at 1005). Therefore, "while Great Western's claim for damages may require review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be rejected or overruled for Great Western to prevail. Accordingly, the review and rejection requirement of the *Rooker-Feldman* doctrine [was] not met[.]" *Id.* (alteration to original).

In the instant matter, Plaintiff's claims against Ross for violation of his federal constitutional rights and conspiracy for which he seeks monetary damages, are not barred by *Rooker-Feldman*. The source of Plaintiff's injuries as to these claims is not the state court judgments. Instead, the source of Plaintiff's alleged injuries is Defendant Ross' alleged actions in participating in the alleged violation of his constitutional rights and the claimed conspiracy. These claims are independent because they stem from the alleged actions of Defendant Ross, rather than from the judgments themselves. Even though Plaintiff's retaliation claim may arguably involve a review of the facts and circumstances leading to Judge Nauhaus' revocation of Plaintiff's Drug Court alternative/intermediate sentence, the state court judgments would not have to be rejected or overruled for Plaintiff to prevail on his independent constitutional claims for damages. Accordingly, *Rooker-Feldman* does not bar Plaintiff's claims against Defendant Ross for monetary damages.

### d. Section 1983 Claims against Defendant Ross

Defendant Ross, in her Brief in Support of Motion to Dismiss, addresses liability with respect to § 1983 claims for violations of Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment rights. Plaintiff clarifies his claims against Defendant Ross in his Opposition to Ross' Motion to Dismiss his Complaint. (ECF No. 70.) With regard to the averments presented by Plaintiff in his Complaint, taken as true and considered liberally, in conjunction with his

Opposition brief at ECF No. 70, Plaintiff's claims against Defendant Ross are as follows: 1) Fifth Amendment claim for violation of Plaintiff's due process rights; 2) Eighth Amendment claim for denial of medical care; 3) First Amendment retaliation claim; 4) Fourteenth Amendment Equal Protection claim; and 5) conspiracy to deny Plaintiff medical care pursuant to §§ 1983, 1985 and 1986.

### i     Fifth Amendment claim

The Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

Although Plaintiff does not specify what provision of the Fifth Amendment Ross has allegedly violated, the only provision that could be applicable to the facts and circumstances of this case is the Due Process Clause. Any attempt by Plaintiff to state a Fifth Amendment due process violation must fail because the Due Process Clause of the Fifth Amendment does not limit actions of state officials. *Huffaker v. Bucks County Dist. Attorney's Office*, 758 F. Supp. 287, 290 (E.D. Pa. 1991) (citing *Bartkus v. Illinois*, 359 U.S. 121 (1959); *Brock v. North Carolina*, 344 U.S. 424 (1953)) (other citation omitted). Consequently, Plaintiff's claim for violation of his Fifth Amendment rights must be dismissed with prejudice. Any attempt to amend this claim would be futile as a matter of law.

ii.     Eighth Amendment claim

As noted above, in light of the "Proposed Amendment" contained within Plaintiff's

Objections at ECF No. 81, the Court recommends that Defendant Ross' Motion to Dismiss be

denied without prejudice as it relates to Plaintiff's Eighth Amendment claim .  Pursuant to

*Twombly* and its progeny, the factual averments contained in Plaintiff's "Proposed Amendment"

may state a plausible claim for relief pursuant to the Eighth Amendment.  Therefore, it is

respectfully recommended that Defendant Ross' Motion to Dismiss this claim be denied without

prejudice and that Plaintiff be granted leave to amend this claim against Defendant Ross only.

iii.     First Amendment retaliation claim

The First Amendment provides:

> Congress shall make no law respecting an establishment of
> religion, or prohibiting the free exercise thereof; or abridging the
> freedom of speech, or of the press; or the right of the people
> peaceably to assemble, and to petition the government for a redress
> of grievances.

U.S. Const. amend. I.  The First Amendment right to free speech is incorporated into the

Fourteenth Amendment Due Process Clause, and for that reason is applicable to the states.  *See*

*Miller v. Clinton County*, 544 F.3d 542, 545 n.1 (3d Cir. 2008).  Although Plaintiff does not

allege he was deprived of his right to speak directly, "[r]etaliation for the exercise of

constitutionally-protected rights is itself a violation of rights secured by the Constitution

actionable under § 1983."  *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990).

In order to establish retaliation in violation of the First Amendment pursuant to § 1983, a

plaintiff must prove that (1) he was engaged in constitutionally protected speech, (2) he was

treated adversely by a state actor, and (3) the protected speech was a substantial or motivating factor in causing the retaliation.  *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004); Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).  The question whether the speech is protected is one of law, while the remaining questions are questions of fact.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).

All speech, except for certain narrow categories,[14] is protected by the First Amendment. Here, Plaintiff's request for medical treatment is protected speech.

As noted above, in light of the "Proposed Amendment" contained within Plaintiff's Objections at ECF No. 81, the Court recommends that Defendant Ross' Motion to Dismiss be denied without prejudice as it relates to Plaintiff's First Amendment Retaliation claim.  Pursuant to *Twombly* and its progeny, the factual averments contained in Plaintiff's "Proposed Amendment" may state a plausible claim for relief pursuant to the First Amendment.  Therefore, it is respectfully recommended that Defendant Ross' Motion to Dismiss this claim be denied without prejudice and that Plaintiff be granted leave to amend this claim against Defendant Ross only.

iv.     Fourteenth Amendment equal protection claim

The Equal Protection Clause provides "no . . . state shall deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1.  Pursuant to the Equal Protection Clause, all persons are not entitled to be treated identically; rather, the Equal Protection Clause requires that "all persons similarly situated should be treated alike."  *Artway v.*

---

[14] Examples of the narrow categories of speech deemed unworthy of full First Amendment protection include obscenity, "fighting words," and libel.  *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-90 (1992).

*Attorney General of N.J.,* 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v.*

*Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)). "To state a claim under the Equal Protection

Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the

plaintiff because of membership in a protected class." *Shoemaker v. City of Lock Haven,* 906 F.

Supp. 230, 238 (M.D. Pa. 1995) (quoting *Henry v. Metro. Sewer Dist.,* 922 F.2d 332, 341 (6th

Cir. 1990)); *see Tillman v. Lebanon County Corr. Facility,* 221 F.3d 410, 423 (3d Cir. 2000).

Protected classes include those based on race, religion, national origin, and those impacting

fundamental rights. *Artway*, 81 F.3d at 1267. Therefore, if the differential treatment involves a

protected classification such as race, the government must have a compelling reason for the

differential treatment. *City of Cleburne,* 473 U.S. at 440. A § 1983 plaintiff must allege the

existence of purposeful discrimination, and aver facts to show that he was treated differently

from similarly situated individuals. *See Kennan v. City of Philadelphia,* 983 F.2d 459, 465 (3d

Cir. 1992).

Plaintiff avers that Ross conspired with other defendants to deprive him of the equal

protection of the First, Fifth, Eighth, and Fourteenth Amendments. (ECF No. 7 at ¶¶ 26, 29.) He

continues that other defendants "were motivated by an invidiously discriminatory racial animus

against African Americans." (ECF No. 7 at ¶ 30.)

Construing Plaintiff's Complaint liberally, and affording him every favorable inference,

he has failed to plead any facts to suggest that he was treated differently from similarly situated

individuals outside his protected class. He pleads absolutely no facts to suggest that he was

treated differently from others at Cove Forge or Pyramid Health who were similarly situated in

terms of their medical needs, because he is an African American. More importantly, the

Complaint does not suggest that Ross treated him differently than others similarly situated, nor

does the Complaint suggest that Ross harbored any racial animus. Clearly, any attempt to amend his equal protection claim as to Defendant Ross would be futile. Plaintiff's claim for violation of the Fourteenth Amendment Equal Protection Clause as to Defendant Ross must be dismissed.

    2.  <u>Sections 1983, 1985 and 1986 Conspiracy Claims against Ross</u>

In order to make out a claim for conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants. *Bieros v. Nicola*, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *See, e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494 (2000). Further, in light of *Twombly* and its progeny, there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great Western Mining & Mineral Co.,* 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

In the instant action, Plaintiff has failed to allege any facts that plausibly suggest a meeting of the minds between Ross and any other defendant. Plaintiff avers absolutely no facts regarding the period of the conspiracy, or any actions taken by Ross or any other defendants in furtherance of the conspiracy. In fact, Plaintiff's only suggestion of conspiracy is that the defendants agreed to send Plaintiff back to jail because he repeatedly requested medical care. Yet, the complaint is devoid of any details supporting Plaintiff's conclusory averment.

Although Plaintiff has failed to specify whether he is asserting claims under § 1985(2) or 1985(3), construing the Complaint liberally, and construing all inferences in the light most favorable to the Plaintiff, his averments appear to relate to a claim for conspiracy pursuant to § 1985(3). Section 1985(3) establishes a cause of action against any person who enters into a private conspiracy for the purpose of depriving an individual of the equal protection of the laws. *Rogin v. Bensalem Township.*, 616 F.2d 680, 696 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029 (1981). The provisions of the statute encompass private conspiracies as well as actions under color of state law. *Griffin v. Breckenridge,* 403 U.S.88, 101 (1971). In order to state a claim under § 1985(3), the Plaintiff must allege four elements: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; and 4) injury to a person or property or deprivation of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983) (citing *Griffin,* 403 U.S. at 102). Plaintiff must set forth specific factual allegations that demonstrate collusion or concerted action among the alleged conspirators. *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)),*abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.,* 326 F.3d 392, 400 (3d Cir. 2003); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991), *later proceeding*, *Young v. Quinlan*, 960 F.2d 351 (3d Cir. 1992), *superseded by statute,* Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, *as discussed in Nyhuis v. Reno,* 204 F.3d 65 (3d Cir. 2000). Even though the Supreme Court held in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), that the allegations in a § 1983 complaint cannot

be held to a standard of heightened specificity, a plaintiff must allege conspiracy with some particularity. *Bieros v. Nicola*, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing *Leatherman,* 507 U.S. at 168). "While the pleading standard under [Fed. R. Civ. P.] Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements." *Loftus v. Southeastern Pennsylvania Transportation Authority*, 843 F. Supp. 981, 987 (E.D. Pa. 1994).

Plaintiff has failed to allege any facts that indicate that Ross entered into any agreement or plan to deprive Plaintiff of his constitutional rights. "[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim." *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch*., 972 F.2d 1364, 1377 (3d Cir. 1992) (quotation omitted). The Court has carefully examined the allegations of the Complaint. Disregarding all legal conclusions, and accepting all of the Complaint's well pleaded facts as true, the Court must conclude that Plaintiff has not stated a plausible claim for relief pursuant to 42 U.S.C. § 1985(3). *Fowler,* 578 F.3d at 210-11. Accordingly, he has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1985(3). *United States ex rel. Simmons v. Zibilich*, 542 F.2d 259 (5th Cir. 1976) (dismissal of cause of action for damages arising out of alleged conspiracy to interfere with civil rights was proper where convict's conclusory pleadings failed to allege any facts on which to base a conspiracy charge).

With regard to 42 U.S.C. § 1986, Plaintiff's claims pursuant to § 1986 must also be dismissed with prejudice because a § 1986 claim cannot exist without a viable § 1985 claim.

42 U.S.C. § 1986 provides in part as follows:

> Every person who, having knowledge that any of the
> wrongs conspired to be done, and mentioned in section 1985 of
> this title, are about to be committed, and having power to prevent
> or aid in preventing the commission of the same, neglects or

refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action . . . .

42 U.S.C. § 1986.

Liability under 42 U.S.C. § 1986 is predicated on knowledge of a violation of 42 U.S.C. § 1985. *Bell v. City of Milwaukee*, 746 F.2d 1250, 1256 (7th Cir. 1984). As stated above, Plaintiff has not alleged sufficient facts to support liability under 42 U.S.C. § 1985(3). Consequently, his claim under 42 U.S.C. § 1986 should be dismissed with prejudice. *Accord Rouse v. Benson*, 193 F.3d 936, 943 (8th Cir. 1999) (holding that inmate's allegations did not support liability under 42 U.S.C. §§ 1985(3) or 1986 as he failed to demonstrate a meeting of the minds of the alleged conspirators). Any attempt to amend this claim would be futile.

**III.    CONCLUSION**

It is respectfully recommended that the Motion to Dismiss (ECF No. 32) filed by Defendants Altoona Regional Hospital, Doctor John Doe #6, Doctor John Doe #7, Doctor Jane Doe #4 be granted, and that any state law claim for medical malpractice against these Defendants be dismissed without prejudice. It is further recommended that the Motion to Dismiss filed by Defendant Natalie Ross (ECF No. 48) be granted in part and denied without prejudice in part. It is recommended that Defendant Ross' Motion to Dismiss be denied without prejudice as it relates to Plaintiff's Eighth Amendment claim and First Amendment retaliation claim. It is further recommended that Plaintiff be granted leave to amend his Complaint as to these claims against Defendant Ross only. If Plaintiff fails to file a curative amendment within the time

allowed by the District Judge, then this Magistrate Judge recommends that the Eighth and First Amendment Retaliation claims be dismissed with prejudice. Defendant Ross' Motion to Dismiss as to all other claims should be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Civil Procedure 72(b)(2), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of services to file objections to this Amended Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: January 23, 2012

BY THE COURT:

_____

LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc:     All Counsel of Record
        Via Electronic Mail

        Joseph Ricky Jackson
        1427 Loraine St.
        Pittsburgh, PA 15212